IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>NewPage Corporation, *et al.*,[1]<br><br>                      Reorganized Debtors. | Chapter 11<br><br>Case No. 11-12804 (KG)<br><br>(Jointly Administered) |
| Pirinate Consulting Group LLC,<br>as Litigation Trustee of the NP Creditor<br>Litigation Trust,<br>                      Plaintiff,<br><br>vs.<br><br>The Dow Chemical Company,<br>                      Defendant. | Adv. No. **Refer to Summons** |

**COMPLAINT TO AVOID TRANSFERS
PURSUANT TO 11 U.S.C. §§ 547 AND 502 AND TO RECOVER
PROPERTY TRANSFERRED PURSUANT TO 11 U.S.C. § 550**

Pirinate Consulting Group LLC, Litigation Trustee of the NP Creditor Litigation Trust (the "Trustee" or the "Plaintiff"), by and through its undersigned counsel, files this complaint (the "Complaint") to avoid and recover transfers against The Dow Chemical Company (the "Defendant"), and in support thereof alleges upon information and belief that:

**NATURE OF THE CASE**

1.      Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all preferential transfers of property that occurred during the ninety (90) day period prior to the commencement of the Debtors'

---

[1] The "Reorganized Debtors" in these Chapter 11 cases and, prior to the Effective Date (as defined below), the "Debtors," along with the last four digits of each Reorganized Debtor's federal tax identification number, as applicable, are: Chillicothe Paper Inc. (6154), Escanaba Paper Company (5598), Luke Paper Company (6265), NewPage Canadian Sales LLC (5384), NewPage Consolidated Papers Inc. (8330), NewPage Corporation (6156), NewPage Energy Services LLC (1838), NewPage Group Inc. (2465), NewPage Holding Corporation (6158), NewPage Port Hawkesbury Holding LLC (8330), NewPage Wisconsin System Inc. (3332), Rumford Paper Company (0427), Upland Resources, Inc. (2996), and Wickliffe Paper Company LLC (8293). The Reorganized Debtors' corporate headquarters is located at 8540 Gander Creek Drive, Miamisburg, OH 45342.

bankruptcy proceedings pursuant to 11 U.S.C. §§ 547 and 550. To the extent that Defendant has filed a proof of claim or has a claim listed on the Debtors'[2] schedules as undisputed, liquidated, and not contingent, or has otherwise requested payment from the Debtors or the Debtors' chapter 11 estates (collectively, the "Claims"), this Complaint is not intended to be, nor should it be construed as, a waiver of Plaintiff's right to object to such Claims for any reason including, but not limited to, 11 U.S.C. § 502 (a) through (j) ("Section 502"), and such rights are expressly reserved. Notwithstanding this reservation of rights, certain relief pursuant to Section 502 may be sought by Plaintiff herein as further stated below.

## JURISDICTION AND VENUE

2.	This court has subject matter jurisdiction over this adversary proceeding, which arises under title 11, arises in, and relates to cases under title 11, in the United States Bankruptcy Court for the District of Delaware (the "Court"), Case No. 11-12804 (KG), pursuant to 28 U.S.C. §§ 157 and 1334(b).

3.	The statutory and legal predicates for the relief sought herein are sections 502, 547 and 550 of the United States Code, 11 U.S.C. §§101-1532 (the "Bankruptcy Code") and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4.	This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter final orders for matters contained herein.

5.	Pursuant to Local Bankruptcy Rule 7008-1, Plaintiff states that it does consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent

---

[2] The Debtors are all entities listed in footnote 1.

consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

6. Venue is proper in the District of Delaware pursuant to 28 U.S.C. §§ 1408 and 1409.

## PROCEDURAL BACKGROUND

7. On September 7, 2011 (the "Petition Date") the Debtors each commenced a case by filing a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code.

8. On September 8, 2011, the Court entered an order authorizing the joint administration of the chapter 11 cases for procedural purposes pursuant to Bankruptcy Rule 1015(b) [Docket No. 55].[3]

9. On December 12, 2012, the Debtors filed the *Debtors' Modified Fourth Amended Joint Chapter 11 Plan* [Docket No. 2904] (the "Plan"). On December 14, 2012, the Court confirmed the Plan and entered the *Findings of Fact and Conclusions of Law Regarding Confirmation of Debtors' Modified Fourth Amended Chapter 11 Plan* [Docket No. 2944] and the *Order Confirming Debtors' Modified Fourth Amended Joint Chapter 11 Plan* [Docket No. 2945] (the "Confirmation Order").

10. On December 21, 2012 (the "Effective Date"), all conditions to the effectiveness of the Plan had been satisfied or waived, and the Plan was substantially consummated.

11. Pursuant to the Plan, creditors of the Debtors are impaired and will not be paid in full.

---

[3] All docket items referenced are from Case No. 11-12804, under which the bankruptcy cases are jointly administered.

**THE PARTIES**

12. Plaintiff was appointed as trustee of the NP Creditor Litigation Trust pursuant to the Plan. Pursuant to the Plan and as governed by a Litigation Trust Agreement attached as Schedule 1.2.95 to the Plan [D.I. 2829], the Trustee is authorized, among other things, to investigate, prosecute and resolve preference actions.

13. The Debtors and their non-debtor subsidiaries and affiliates (the "Company") comprised the largest coated paper manufacturer in North America. Coated paper, unlike common writing or typing paper, is typically used in magazines, magazine covers and inserts, corporate annual reports, high-end advertising brochures, direct mail advertising, coated labels, catalogs, and textbooks.

14. NewPage Group Inc. owned 100% of the common stock of NewPage Holding Corporation, which in turn owned 100% of the common stock of NewPage Corporation. The Debtors' principal offices are located at 8540 Gander Creek Drive, Miamisburg, Ohio, 45342.

15. NewPage Corporation was the Company's primary operating subsidiary and directly and indirectly owned the other Debtors (the "Subsidiary Debtors") and various other affiliated non-debtor entities. At all relevant times, the Company operated sixteen (16) papermaking machines at paper mills located in Kentucky, Maine, Maryland, Michigan, Minnesota, and Wisconsin, with distribution centers near major print markets, including New York, Chicago, Minneapolis, and Atlanta. The Company sold paper products primarily in the United States and Canada, using three sales channels: (a) direct sales, which consist of sales made directly to end-use customers (primarily large companies such as publishers, printers, and retailers); (b) merchant sales, which consist of sales made to paper merchants and brokers, who in turn sell to end-use customers; and (c) specialty sales, which consist of sales made to

packaging and label manufacturers.

    a.    NewPage Corporation is a Delaware corporation, and has its principal place of business in Miamisburg, Ohio. NewPage Corporation also operates a research and development facility located in Biron, Wisconsin. NewPage Corporation is the Debtors' primary operating subsidiary and directly and indirectly owns the other Debtors and various other affiliated non-debtor entities. The family of papermaking companies owned by NewPage Corporation includes the former paper operations of MeadWestvaco, Consolidated Papers, and Stora Enso North America.

    b.    Escanaba Paper Company ("EPC") is a Michigan corporation, and owns a paper mill located in Escanaba, Michigan. The EPC mill is located at 7100 County Road 426, Escanaba, MI 49289. The EPC mill facility operates a Kraft pulp mill, refiner mechanical pulp mill, three paper machines, a pulp dryer, three off-machine blade coaters, six supercalenders and six winders. The EPC mill produces coated freesheet, coated groundwood, specialty, and uncoated papers used for magazines, catalogs, annual reports, textbooks, supplements and product brochures.

    c.    Luke Paper Company ("LPC") is a Delaware corporation, and owns a paper mill located in Luke, Maryland. The LPC mill is located at 300 Pratt Street, Luke, MD 21540. The LPC mill operates two paper machines, two on-machine coaters, four supercalenders, five winders, three sheeters, and a carton line. The LPC mill produces coated freesheet papers used for commercial and publication printing as well as coated-one-side papers for label applications.

    d.    NewPage Wisconsin System Inc. ("NPWSI") is a Wisconsin corporation, and owns paper mills located in Biron, Wisconsin; Duluth, Minnesota; Stevens Point,

Wisconsin; and Wisconsin Rapids, Wisconsin. NPWSI's corporate headquarters are located at 231 First Avenue North, Wisconsin Rapids, WI 54454.

    i. The Biron, Wisconsin mill is located at 300 North Biron Drive, Wisconsin Rapids, WI 54494. The mill operates two paper machines, one on-machine coater, one off-machine coater, four supercalenders, three finishing winders (cuts to customer size), and one cut down winder (for reprocessing rolls). Production is equally divided between lightweight coated paper for monthly magazines; and ultra-lightweight coated paper for weekly magazines, catalogs and advertising materials.

    ii. The Duluth, Minnesota mill is located at 100 North Central Avenue, Duluth, MN 55807. The mill operates one paper machine, three supercalenders, two winders, a pressurized groundwood pulp mill, and a recycled pulp mill with a wet lap pulp machine. The mill has the capacity to produce supercalendered paper. In addition, the mill operates a recycled pulp paper mill that produces recycled pulp from recovered paper, pulp used in fine printing and writing grade papers, and mechanical pulp replacement used primarily in supercalendered and lightweight coated papers.

    iii. The Stevens Point, Wisconsin mill is located at 707 Arlington Place, Stevens Point, WI 54481. The mill operates two paper machines, one off-machine hot-soft calendar, two finishing winders and four cut down winders. The mill's production includes coated and uncoated specialty papers, such as (a) flexible packaging papers for pouches, spiral canisters, bags and various types of wrapping paper, (b) label papers for bottles, jars and cans, (c) high-gloss papers that are metalized, and (d) technical papers for sales receipts, address labels, postage stamps and release liners.

    iv. The Wisconsin Rapids, Wisconsin mill is located at 310 3rd Avenue North, Wisconsin Rapids, WI 54495. The mill facility includes a pulp mill, paper mill and sheeting operation. The mill produces coated freesheet papers for high-end commercial printing, direct mail, publications, and digital applications.

e. Rumford Paper Company ("RPC") is a Delaware corporation, and operates a paper mill located in Rumford, Maine. The RPC mill is located at 35 Hartford Street, Rumford, ME 04276. The RPC mill operates steam and power generation facilities, softwood and hardwood Kraft pulp mills, a groundwood pulp mill, three paper machines with on-machine blade coaters, one pulp dryer and supporting finishing equipment. The mill produces coated one-and two-sided paper used for textbooks,

magazines, game boards, catalogs, gift wrap, stickers, window signage and food and beverage labels.

f.  Wickliffe Paper Company LLC ("WPC") is a Delaware corporation, and operates a paper mill located in Wickliffe, Kentucky. The WPC mill is located at 1724 Fort Jefferson Hill Road, Wickliffe, KY 42087. The WPC mill location has a woodyard, pulp mill, paper machine, off-machine blade coater, two supercalenders, two winders, finishing machines, and a pulp dryer. The mill's power and recovery process consists of one recovery boiler, a lime kiln, one wood waste boiler, and two gas-fired boilers. The mill produces coated freesheet and uncoated paper used for magazine covers, catalogs, annual reports, high profile advertising inserts, product brochures, product packaging (laminating) and direct mail.

16. Upon information and belief, at all relevant times, Defendant is a chemical, plastics and agricultural products manufacturer. Upon further information and belief, Defendant's principal place of business is located at 2030 Dow Center, Midland, MI 48674. Plaintiff is informed and believes and on that basis alleges that Defendant is a corporation residing in and subject to the laws of the State of Delaware.

## FACTUAL BACKGROUND

17. Prior to the Petition Date, the Debtors, as producers and sellers of coated paper, maintained business relationships with various business entities, through which the Debtors regularly purchased, sold, received, and/or delivered goods and services.

18. As producers and sellers of coated paper, the Debtors regularly purchased goods from various entities including vendors, creditors, suppliers and distributors. The Debtors, as a

paper manufacturing company, also regularly paid for services used to facilitate its paper production business.

19. Historically, the Debtors and their non-debtor affiliates utilized a largely centralized cash management system (the "Cash Management System") to collect and transfer funds from numerous sources and accounts, disburse funds to satisfy obligations arising from the daily operations of their businesses, and invest funds in an overnight account. The Debtors used the Cash Management System to streamline the collection, transfer, and disbursement of funds generated by the Debtors' business operations, and the Debtors accurately recorded which entity had made such collections, transfers, and disbursements as they were made. The Cash Management System was operated and maintained by NewPage Corporation, with NewPage Corporation paying payables on behalf of each of the Debtors. The Debtors recorded in their books and records any receipts and/or disbursements made on behalf of a Debtor as intercompany balances. The Cash Management System consisted of an integrated network of bank accounts held at, *inter alia*, JP Morgan Chase N.A. and Wells Fargo Bank, N.A. Disbursements were made to creditors from two primary U.S. dollar disbursement accounts, the Wells Fargo Accounts Payable and two Wells Fargo Port Hawkesbury Accounts Payable (the "Disbursement Accounts"). The Debtors used the Disbursement Accounts to fund operations and payroll obligations of the applicable Debtor.

20. During the ninety (90) days before the Petition Date, that is between June 9, 2011, and September 7, 2011 (the "Preference Period"), the Debtors continued to operate their business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits or otherwise to certain entities.

21. During the course of their relationship, the Debtors and Defendant entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements"). The details of each of the Agreements paid for during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit "A." Such details include "Invoice Number," "Invoice Date," "Invoice Amount," and "Debtor(s) Incurring Antecedent Debt."

22. The Debtors and Defendant conducted business with one another through and including the Petition Date pursuant to the Agreements.

23. As identified in the Agreements, the Debtors purchased goods and/or services from Defendant.

24. Plaintiff has completed an analysis of all readily available information of the Debtors and is seeking to avoid all of the transfers of an interest of the Debtors' property made by the Debtors to Defendant within the Preference Period.

25. Plaintiff has determined that the Debtors made transfer(s) of an interest of the Debtors' property to or for the benefit of Defendant during the Preference Period through payments aggregating to an amount not less than $4,703,648.13 (the "Transfer" or "Transfers"). The details of each Transfer is set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit "A." Such details include "Check Number," "Check Amount," "Check Clear Date," and "Debtor Transferor(s)."

26. During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's intention to avoid and recover all transfers made by the Debtors of an interest of the Debtors in property and to or for the benefit of Defendant or any other transferee. Plaintiff

reserves its right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action (*e.g.*, but not exclusively, 11 U.S.C. §§ 542, 544, 545, 548 and/or 549) (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

27. Plaintiff acknowledges that some of the Transfers might be subject to defenses under Bankruptcy Code section 547(c), for which Defendant bears the burden of proof under Section 547(g).

## CLAIMS FOR RELIEF

### COUNT I

### (Avoidance of Preference Period Transfers – 11 U.S.C. § 547)

28. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

29. Each Transfer was made to Defendant by the Debtor(s) identified on Exhibit "A" under the column heading "Debtor Transferor(s)." The Debtor Transferor(s) directed NewPage Corporation to make payments on their behalf, and each payment was recorded as an intercompany receivable due and owning from the Debtor Transferor to NewPage Corporation.

30. Each Transfer was paid from the Disbursement Accounts described *supra*. See Exhibit "A."

31. Each Transfer constituted a transfer of an interest in property of the Debtors as identified on Exhibit "A."

32. During the Preference Period, Defendant was a creditor at the time of each Transfer by virtue of supplying goods and/or services identified in the Agreements to the Debtors identified on Exhibit "A" under the column heading "Debtor(s) Incurring Antecedent Debt" for which the identified Debtors were obligated to pay following delivery in accordance with the Agreements. See Exhibit "A."

33. Each Transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor(s) identified on Exhibit "A" under the column heading "Debtor(s) Incurring Antecedent Debt" to Defendant. See Exhibit "A."

34. Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor(s) identified on Exhibit "A" under the column heading "Debtor(s) Incurring Antecedent Debt" to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the Debtor(s) identified on Exhibit "A" under column heading "Debtors Transferor(s)." See Exhibit "A."

35. Each Transfer was made while the Debtors were insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f).

36. Each Transfer was made during the Preference Period. See Exhibit "A."

37. As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Debtor's case was under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtor's schedules filed in the underlying

bankruptcy case as well as the proofs of claim that have been received to date, the Debtor's liabilities exceed their assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtors' bankruptcy estates.

38. In accordance with the foregoing, each Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

## COUNT II

### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

39. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Count.

40. Plaintiff is entitled to avoid the Transfer(s) pursuant to 11 U.S.C. § 547(b) (the "Avoided Transfer(s)").

41. Defendant was the initial transferee of the Avoided Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoided Transfer(s) were made.

42. Pursuant to 11 U.S.C.§ 550(a), Plaintiff is entitled to recover from Defendant the Avoided Transfer(s), plus interest thereon to the date of payment and the costs of this action.

## COUNT III

### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

43. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Count.

44. Defendant is an entity from which property is recoverable under 11 U.S.C. § 550.

45. Defendant is the transferee of the Avoided Transfer(s) avoidable under 11 U.S.C. § 547.

46.  Defendant has not paid the amount of the Avoided Transfer(s), or turned over such property, for which Defendant is liable under 11 U.S.C. § 550.

47.  Pursuant to 11 U.S.C. § 502(d), any and all Claims of Defendant and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoided Transfer(s), plus interest thereon and costs.

48.  Pursuant to 11 U.S.C. § 502(j), any and all Claims of Defendant, and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff previously allowed by the Debtors or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoided Transfer(s).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant it the following relief against Defendant:

As to Counts I through III, that the Court enter a judgment against Defendant:

A.  That the Avoided Transfer(s) avoidable under 11 U.S.C. § 547 in the total aggregate amount of not less than $4,703,648.13 be avoided;

B.  That the Avoided Transfer(s), to the extent that they are avoided pursuant to 11 U.S.C. § 547, be recovered by Plaintiff pursuant to 11 U.S.C. § 550;

C.  That judgment be entered against Defendant in the amount of $4,703,648.13 (the "Judgment");

D.  Disallowing, in accordance with 11 U.S.C. § 502(d), any Claims held by Defendant and/or its assignee until Defendant satisfies the Judgment;

E. Disallowing, in accordance with 11 U.S.C. § 502(j), any Claims held by Defendant and/or its assignee until Defendant satisfies the Judgment;

F. Awarding pre-judgment interest at the maximum legal rate running from the date of the filing of the Complaint to the date of Judgment herein;

G. Awarding post-judgment interest at the maximum legal rate running from the date of Judgment herein until the date the judgment is paid in full, plus costs;

H. Requiring Defendant to pay forthwith the Judgment amount awarded in favor of Plaintiff; and

I. Granting Plaintiff such other and further relief as the Court deems just and proper.

Dated: August 30, 2013                            **THE ROSNER LAW GROUP LLC**

Delaware Counsel                                  */s/ Frederick B. Rosner*
                                                  Frederick B. Rosner (DE 3995)
                                                  Scott J. Leonhardt (DE 4885)
                                                  Julia B. Klein (DE 5198)
                                                  824 Market Street, Suite 810
                                                  Wilmington, DE 19801
                                                  Tel.: (302) 777-1111
                                                  rosner@teamrosner.com
                                                  leonhardt@teamrosner.com
                                                  klein@teamrosner.com

                                                  and

Primary Counsel
(**Please Contact Primary Counsel**)              Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
                                                  Kara E. Casteel,, Esq., MN SBN 0381995
                                                  2600 Eagan Woods Drive, Suite 400
                                                  St. Paul, MN  55121
                                                  Telephone: (651) 406-9665  ext. 846
                                                  Fax: (651) 406-9676
                                                  e-mail: kcasteel@askllp.com

and

Edward E. Neiger, Esq.
Marianna Udem, Esq.
Brigette G. McGrath, Esq.
151 West 46th Street, 4th Fl.
New York, NY  10036
Telephone: (212) 267-7342
Fax: (212) 918-3427

*Attorneys for Plaintiff, Pirinate Consulting Group LLC, Litigation Trustee of the NP Creditor Litigation Trust*